UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 11/25/19

JORGE SANCHEZ,

           Petitioner,

v.

THOMAS DECKER, *as Field Office Director, New York City Field Office, U.S. Immigration & Customs Enforcement,* JAMES MCHENRY, *as Director of the Executive Office for Immigration Review,* KEVIN K. MCALEENAN, *as Acting Secretary, U.S. Department of Homeland Security,* AND WILLIAM BARR, *as Attorney General, U.S. Department of Justice,*

           Respondents.

19-cv-8354 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Petitioner Jorge Sanchez is a 26-year-old Mexican citizen who was arrested by the U.S. Immigration and Customs Enforcement ("ICE") earlier this year. Upon his arrest, Sanchez was served with a Notice to Appear, initiating removal proceedings against him at Varick Street Immigration Court in Manhattan. He was then detained at the Hudson County Correctional Facility (the "HCCF") in Kearny, New Jersey. Aside from being temporarily transported to New York on February 5, 2019 to be served with a corrected Notice to Appear, Sanchez has been detained at the HCCF in New Jersey since his arrest.

Sanchez has filed a petition for a writ of habeas corpus here in the Southern District of New York, naming as Respondents Thomas Decker, the Director of ICE's New York City Field Office, James McHenry, the Director of the Executive Office for Immigration Review, Kevin K. McAleenan, Acting Secretary of the U.S. Department of Homeland Security, and William Barr,

the Attorney General of the U.S. Department of Justice. Sanchez challenges his prolonged detention without a bond hearing, and seeks his release from custody or, in the alternative, an individualized bond hearing. Respondents now move to dismiss the case or transfer it to the District of New Jersey, which Sanchez opposes.

For the reasons that follow, the Court holds that it does not have jurisdiction over Sanchez's petition because Sanchez was confined at the HCCF in New Jersey at the time he filed his petition, and because the warden of the HCCF is the proper respondent for the petition. Sanchez's petition must thus be brought in the District of New Jersey. Accordingly, Respondents' motion to transfer is granted, and this case will be transferred to the District of New Jersey.

## BACKGROUND

### I. Sanchez's Immigration History

Sanchez is a 26-year-old Mexican citizen who has lived in the United States for nearly 20 years. Pet. ¶¶ 1, 21. On January 18, 2019, ICE arrested Sanchez and served him with a Notice to Appear, which initiated removal proceedings against him at Varick Street Immigration Court in Manhattan, New York. *Id.* ¶¶ 2, 25. He was then detained at the HCCF in Kearny, New Jersey pending the resolution of those proceedings. *Id.* ¶¶ 8, 42. On February 5, 2019, ICE temporarily transported Sanchez to New York and served him with a corrected Notice to Appear. Gov't Mot. at 2. Since February 5, 2019, Sanchez has not been physically present in New York. *Id.*

Sanchez filed his habeas petition on September 9, 2019. He seeks a writ ordering ICE to release him or, alternatively, to provide him with an individualized bond hearing. Pet. ¶ 7.

### II. The Government's Motion to Transfer

On September 27, 2019, Respondents moved to dismiss the case or to transfer it to the District of New Jersey. *See* Dkts. 8-10. Sanchez opposed that motion on October 11, 2019, Dkt.

2

11, and the Immigration Defense Fund filed an amicus brief in support of Sanchez's position on October 25, 2019, Dkt. 17. Respondents filed a reply in further support of their motion on October 21, 2019, Dkt. 13, and a response to the amicus brief on November 8, 2019, Dkt. 18.

Respondents maintain that Ronald Edwards, the warden of the HCCF, is the proper respondent for Sanchez's habeas petition because Edwards "exercises direct physical custody and control over Sanchez while he is detained at [the HCCF]." Gov't Mot. at 3. Thus, Respondents argue, this Court lacks jurisdiction over Sanchez's petition, and venue is only proper in the District of New Jersey, the district where Sanchez is confined.

Sanchez contends that venue is proper in the Southern District of New York because "a substantial part of the events and omissions giving rise to [his] habeas claim have occurred within this District, including the processing of [him] after his arrest by Respondents, the determination that he is subject to detention under 8 U.S.C. § 1226(c), the determination that he will not be granted a bond hearing, and every one of his immigration hearings." Pet. ¶ 17. Sanchez argues that he is "in the custody of the New York ICE Field Office Director," and thus, the proper respondent is Respondent Decker, the Director of ICE's New York City Field Office. Pet'r Opp'n at 6. According to Sanchez, the fact that ICE "has chosen to house [him] across the Hudson River in a local jail in New Jersey, with which NY-ICE contracts for space to house its detainees, does not warrant dismissal or transfer of this petition." *Id.* at 1. Sanchez also asserts that "additional evidence and more recent case law make clear that NY-ICE is [his] true immediate custodian, whereas the local jail warden has no power to produce [him] to court, to grant the relief he seeks, or even to properly defend against this action." *Id.* It is undisputed that at all relevant times, including the day Sanchez filed his habeas petition, Sanchez has been detained at the HCCF in New Jersey.

.

3

## DISCUSSION

### I. The Immediate Custodian Rule Applies to Sanchez's Habeas Petition

As this Court has previously explained, federal district courts may grant writs of habeas corpus only "within their respective jurisdictions." *Salcedo v. Decker*, No. 18-cv-8801 (RA), 2019 WL 339642, at *1 (S.D.N.Y. Jan. 28, 2019) (quoting 28 U.S.C. § 2241(a)). In the habeas context, jurisdiction is determined by the location of the "proper respondent," that is, "the person having custody of the person detained." *Id.* (quoting 28 U.S.C. § 2243); *see also* 28 U.S.C. § 2242 (requiring that a habeas petition identify "the name of the person who has custody over" the petitioner); *Lizardo v. Whitaker*, No. 18-CV-8476 (VEC), 2018 WL 6444371, at *1 (S.D.N.Y. Dec. 5, 2018) ("A writ of habeas corpus must 'be directed to the person having custody of the person detained.'") (quoting 28 U.S.C. § 2243). The question of whether a court has jurisdiction over a particular habeas petition "breaks down into two related subquestions. First, who is the proper respondent to that petition? And second, does [the court] have jurisdiction over him or her?" *Lizardo*, 2018 WL 6444371, at *1 (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004)). Jurisdiction is "evaluated at the time the petition is filed," and is unaffected by any subsequent transfers of the petitioner. *See Golding v. Sessions*, No. 18-cv-3036 (RJS), 2018 WL 6444400, at *2 (S.D.N.Y. Dec. 6, 2018) (citing *Padilla*, 542 U.S. at 440–41).

In *Rumsfeld v. Padilla*, the Supreme Court established the "immediate custodian" rule. This rule provides that in habeas cases challenging "present physical confinement" (known as "core" challenges), the proper respondent is "the person with the ability to produce the prisoner's body before the habeas court," which is, by default, "the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Padilla*, 542 U.S. at 435. In such circumstances, "jurisdiction lies in only one district: the district of

confinement." *Id.* at 443; *see also id.* at 446–47 (referring to the "district of confinement" rule as "an important corollary to the immediate custodian rule"). *Padilla*'s immediate custodian rule therefore "requires a habeas petitioner challenging his 'present physical confinement' to name as a respondent 'the warden of the facility where the prisoner is being held' and to file that action in the district in which he is physically present at the time of filing." *Golding*, 2018 WL 6444400, at *1 (quoting *Padilla*, 542 U.S. at 435, 443); *see also S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 408 (S.D.N.Y. 2018) ("[T]he proper district for a 'core' habeas claim is the district that has 'territorial jurisdiction over the proper respondent.'") (quoting *Padilla*, 542 U.S. at 444). By contrast, when a habeas petitioner challenges a form of custody "other than present physical confinement" (known as a "non-core" challenge), the petitioner "may name as respondent the entity or person who exercises legal control with respect to the challenged 'custody.'" *Sow v. Whitaker*, No. 18-cv-11394 (GBD) (RWL), 2019 WL 2023752, at *2 (S.D.N.Y. May 8, 2019) (quoting *Lemus-Pineda v. Whitaker*, 354 F. Supp. 3d 473, 474 (S.D.N.Y. 2018)).

*Padilla* left open the question of whether its default rule applies in the immigration habeas context, and neither the Supreme Court nor the Second Circuit has yet addressed the issue. However, "the overwhelming majority of courts in this District have applied *Padilla* to habeas petitions 'filed by incarcerated aliens challenging their physical detention prior to deportation.'" *Almazo v. Decker*, No. 18 Civ. 9941 (PAE), 2018 WL 5919523, at *1 (S.D.N.Y. Nov. 13, 2018) (collecting cases). "As aptly stated by Judge Failla of this District, 'footnote 8 of the *Padilla* opinion . . . does not mean that the Court suggested that it would apply a different line of reasoning in the immigration context. Instead the Court merely declined to address the question because the issue was not before it." *Sow*, 2019 WL 2023752, at *3 (citation omitted). Indeed, there is no "compelling distinction between criminal custody and immigration custody as such." *Rodriguez*

5

*Sanchez v. Decker*, No. 18-cv-8798 (AJN), 2019 WL 3840977, at *2 (S.D.N.Y. Aug. 15, 2019) (quoting *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1185 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)). As the Supreme Court noted in *Padilla*, "the [habeas] statute itself makes no such distinction based on the source of the physical detention." *Padilla*, 542 U.S. at 437; *see also Nken v. Napolitano*, 607 F. Supp. 2d 149, 158 (D.D.C. 2009) ("[T]he majority of circuits that have addressed this question agree that no principled distinction exists between habeas actions brought by a prisoner and those brought by a detained alien."). Therefore, as this Court stated in *Salcedo*, "[a]bsent contrary instruction from the Supreme Court or the Second Circuit, and absent any allegation that there was an 'attempt to manipulate' [the petitioner's] transfer in bad faith, this Court will continue to apply the immediate custodian rule" established in *Padilla*. 2019 WL 339642, at *2. Although a "minority of courts have concluded that venue was proper in this district even though the petitioner was confined elsewhere," *Almazo*, 2018 WL 5919523, at *1 (collecting cases), the Court finds no reason to depart from its prior opinions and the weight of the case law, especially on the facts presented here.

As noted above, in the immigration context, courts have consistently "distinguish[ed] between 'core' habeas proceedings – challenges to present physical confinement – and 'non-core' proceedings, which are really challenges to orders of removal." *Golding*, 2018 WL 6444400, at *2 (citation omitted); *see also Fortune v. Lynch*, No. 15 Civ. 8134 (KPF), 2016 WL 1162332, at *2 (S.D.N.Y. Mar. 22, 2016) (finding that a challenge to petitioner's "continued detention," where he argued "that he has been impermissibly detained for more than six months without an individualized bond hearing," is "a challenge to his present physical confinement" and thus "the precise sort of 'core challenge' with which *Padilla* was concerned"); *Heller v. Barr*, No. 19 Civ. 4003 (ER), 2019 WL 2223183, at *1 (S.D.N.Y. May 22, 2019) ("'Non-core' challenges include

challenges to forms of custody other than physical confinement, including orders of removal.") (citation omitted). Accordingly, the courts in this Circuit that have applied *Padilla*'s immediate custodian rule have done so in "core" habeas challenges, finding that the proper respondent is "the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Fortune*, 2016 WL 1162332, at *2 (quoting *Padilla*, 542 U.S. at 435). In "non-core" proceedings, on the other hand, courts in this Circuit have held that the proper respondent is "a person or entity that has *legal custody* of the petitioner." *Golding*, 2018 WL 6444400, at *2 (quoting *Calderon v. Sessions*, 330 F. Supp. 3d 944, 952 (S.D.N.Y. 2018)). This distinction is a sound one, since "[i]f the challenged custody is physical detention, then the immediate, physical custodian is the proper respondent. . . . If, on the other hand, the petition challenges a broader form of legal, non-physical custody, then the proper respondent is the person with legal authority to effect that custody." *S.N.C.*, 325 F. Supp. 3d at 407 (citations omitted).

The next question, then, is whether Sanchez's petition is a "core" habeas challenge. The Court concludes that it is. Sanchez argues that his petition "is not a 'core' habeas petition" because he only challenges the fact that Respondents have "detain[ed] him without providing him a bond hearing," and does not dispute "that [R]espondents have authority to detain him" more generally. *See* Pet'r Opp'n at 6 n.7. Despite Sanchez's attempt to draw this distinction, however, his petition makes clear that he is challenging his present physical custody.[1] Indeed, Sanchez's request for a bond hearing itself "is essentially a challenge to his current immigration detention and therefore falls within the ambit of 'core' proceedings" because "the reason [Sanchez] seeks a bond hearing

---

[1] *See, e.g.*, Pet. ¶ 43 ("At this time, Mr. Sanchez has been detained for over seven months without any individualized review by a neutral fact-finder as to whether his custody in a county jail is at all warranted. Moreover, he has been, and continues to be, detained despite the fact that he has a meritorious claim to relief, withholding of removal."); *id.* ¶ 49 ("In cases of immigration detention, where the detainee's physical liberty interests are clearly at stake, such detention must comport with the due process requirements of the Fifth Amendment . . . ."); *id.* ¶ 57 ("Mr. Sanchez's mandatory detention is unconstitutional . . . .").

7

is to be released from physical custody. While there may be some distinctions metaphysically between requesting release from detention on one hand, and requesting a bond hearing in order to be released on the other[,] . . . it is a distinction without a difference." *Golding*, 2018 WL 6444400, at *2 (citation omitted); *see also Benitez v. An Unknown Immigration Officer*, No. 19-cv-03153-GHW, 2019 WL 3450743, at *1 (S.D.N.Y. July 22, 2019) ("Petitioner's 'core' challenge relates to his continued confinement without the opportunity to post bond."); *Heller*, 2019 WL 2223183, at *2 (finding that "Petitioners' argument that they are challenging the legal process of the bond hearing, as opposed [to] the confinement that resulted from the legal insufficiency of the bond hearing, relies upon a false distinction" because "Petitioners seek as relief a bond hearing at which Petitioner can challenge his current detention"); *Ramos Perez v. Decker*, 355 F. Supp. 3d 185, 187 (S.D.N.Y. 2019) (finding that, where petitioner sought "an immediate custody hearing before an impartial adjudicator in which he must be released, unless DHS proves by clear and convincing evidence that he presents a flight risk or a danger to the community," the petition was a "'core' habeas petition[] because 'it is at bottom a simple challenge to physical custody imposed by the Executive'") (citation omitted).

Because Sanchez has brought a core habeas challenge, *Padilla*'s immediate custodian rule applies. Accordingly, only Sanchez's "immediate custodian" may be named as a respondent, and "not the Attorney General or other 'legal custodian.'" *Salcedo*, 2019 WL 339642, at *2 (citation omitted).

## II. The HCCF Warden is the Proper Respondent

Sanchez next argues that Respondent Decker, the Director of ICE's New York City Field Office, is his "immediate custodian" and thus the proper respondent. Sanchez asserts that, unlike the HCCF warden, Respondent Decker is "the most immediate official who has the power to bring

8

Mr. Sanchez's body before the habeas court, produce him for a bond hearing before the immigration court, and ultimately grant the relief sought." Pet'r Opp'n at 6. While Respondent Decker may have the power to bring Sanchez's body before the court and/or produce him for a bond hearing, the Court finds that Respondent Decker is nonetheless not Sanchez's "immediate custodian" under *Padilla*.

Indeed, the fact that the warden may not have the ultimate authority to release the petitioner or provide him with a bond hearing does not mean that the warden is not the individual's immediate custodian. *See Benitez*, 2019 WL 3450743, at *2 ("Petitioner emphasizes that the warden of the [local jail] does not have the authority to release him. But that is surely true in many cases in which the immediate custodian rule applies, and it does not change the applicability of the rule."). While it may be the case that, in the immigration habeas context, the Director of ICE's New York City Field Office has more immediate control over the petitioner than the Attorney General or some other remote supervisory official does, that Director nonetheless does not have immediate, "day-to-day control" over the petitioner's physical custody. *Padilla*, 542 U.S. at 439.

Sanchez relies on the fact that he is detained by ICE in a "subcontracted local facility" in New Jersey. Pet'r Opp'n at 4 n.4. But numerous courts that have addressed this issue, including this one, have found that the local jail warden is "quite literally" the petitioner's immediate physical custodian regardless of the contractual relationship between ICE and its subcontracted facility. *See, e.g., Kolev v. Sessions*, No. 17-CV-9477 (RA), 2019 WL 1748436, at *1 (S.D.N.Y. Apr. 16, 2019) (noting that "ICE's New York Field Director . . . has no immediate, physical responsibility for the detainees at HCCF"); *Salcedo*, 2019 WL 339642, at *2 (finding that the HCCF warden is the individual "that retains immediate, physical custody over its detainees," and

9

thus is the proper respondent).[2] It is for this reason that "[t]he substantial majority of judges in this District to consider this question have . . . [held] that a defendant detained in New Jersey who seeks to challenge his detention, even if under the supervision of ICE personnel in this District, must bring a habeas action in the District of New Jersey." *Andoh v. Barr*, No. 19 Civ. 8016 (PAE), 2019 WL 4511623, at *2 (S.D.N.Y. Sept. 18, 2019) (citing *Almazo*, 2018 WL 5919523, at *1) (collecting cases)).

In *Lizardo v. Whitaker*, for instance, Judge Caproni explained that while "Petitioner may be right that he is detained in the Hudson County Correctional Facility only because ICE has contracted with the Facility to house Petitioner; that, by contract, the Facility's warden may move Petitioner only with ICE's written consent; that ICE regulations purport to limit the warden's ability to file papers responsive to habeas proceedings like this one; and that 'Respondent Decker dictates every aspect of petitioner's detention, transport, transfer, and release[,]' . . . these circumstances do not change the fact that the warden of the Hudson County Correctional Facility is, quite literally, Petitioner's 'immediate physical custodian' and thus the proper respondent to whom this petition must be directed." 2018 WL 6444371, at *2 (citing *Padilla*, 542 U.S. at 439).

Similarly, in *Golding v. Sessions*, Judge Sullivan relied on *Padilla* to conclude that "a detainee's immediate custodian is the person who 'exercises day-to-day control' over his or her 'physical custody,' not the person who ordered such custody. . . . Thus, even if the Attorney General or an ICE employee is in some way ultimately responsible for Petitioner's detention, the person with day-to-day control over Petitioner (at the time of filing) was the warden of the [local jail]." *Golding*, 2018 WL 6444400, at *3 (citing *Padilla*, 542 U.S. at 439, 434); *see also Ramirez*

---

[2] In *Salcedo*, this Court explicitly considered the Intergovernmental Service Agreement ("IGSA")—the federal government's contract with the HCCF—and concluded that, notwithstanding the IGSA, it is the "HCCF that retains immediate, physical custody over its detainees." 2019 WL 339642, at *2.

*Portillo v. Decker*, No. 19-cv-572 (PKC), 2019 WL 1409450, at *2 (S.D.N.Y. Mar. 28, 2019) (rejecting the argument that Respondent Decker is the proper respondent where petitioner asserted that "Hudson County Correctional Facility is under the authority of a local warden with limited authority to transfer ICE detainees" and that Respondent Decker "has ultimate responsibility over the logistics of his confinement"); *Lemus-Pineda*, 354 F. Supp. 3d at 475 (rejecting the argument that Respondent Decker is the proper respondent where petitioner asserted that "decisions 'regarding whether to continue to detain or release ICE detainees' are made by the ICE field office," and instead finding "the fact that ICE makes decisions regarding Petitioner's detention 'do[es] not change the fact that the warden . . . is, quite literally, Petitioner's immediate physical custodian") (quoting *Lizardo*, 2018 WL 6444371, at *2).[3]

The "additional evidence" submitted by Sanchez in opposition to Respondents' motion does not change this Court's determination that the HCCF warden is "quite literally" Sanchez's immediate custodian. Through several exhibits attached to his opposition, including the ICE Handbook and Performance Based National Detention Standards ("PBNDS"), Sanchez attempts to show that "NY-ICE does exercise immediate, physical custody over its detainees housed at [the HCCF]," and that the HCCF warden "merely operates as an employee or agent of NY-ICE." Pet'r Opp'n at 7. This evidence, however, does not demonstrate that Respondent Decker exercises "day-

---

[3] It is also worth noting that, in some of the cases in this District where the court has adopted the minority view and found that ICE is the proper respondent, the court has done so by applying the legal control test that *Padilla* rejected for "core" habeas challenges. *See, e.g., Calderon*, 330 F. Supp. 3d at 953 (concluding that "in the immigration context, when a petitioner is detained in a local facility pursuant to an IGSA with a federal agency; and *the immediate custodian* must seek the agency's authorization for admission or release of detainees; and further has neither knowledge nor interest in key questions, then *legal custodians are proper respondents* to both core and non-core challenges.") (emphasis added). The Supreme Court has stated, however, that "the legal control test 'comes into play when there is no immediate physical custodian with respect to the *challenged* 'custody.'" *S.N.C.*, 325 F. Supp. 3d at 407 (quoting *Padilla*, 542 U.S. at 439). Here, "because the Court can identify such an immediate *physical* custodian," i.e., Ronald Edwards, the warden of the HCCF, "any inquiry into who exercises *legal* custody of Petitioner is irrelevant." *Lizardo*, 2018 WL 6444371, at *2 (citing *Padilla*, 542 U.S. at 439).

to-day" control over Sanchez while he is detained at the HCCF in New Jersey. To the contrary, it "reinforces the conclusion" that ICE "retains legal or supervisory, but not immediate, control of [the] detainees" at the HCCF. *See Kolev*, 2019 WL 1748436, at *1 n.1. For instance, the Handbook clearly states that, pursuant to the contract with ICE, the Hudson County Department of Corrections & Rehabilitation ("HCDCR") is obligated to provide detainees "with food, clothing, and housing" while they are in custody. Handbook at 2. The Handbook also explains that HCDCR is "responsible for [detainees'] care," *id.* at 4, and that "[t]he majority of [their] daily contact will be with Hudson County Corrections Correctional officers," *id.* at 2. The Handbook further states that the "operations of this facility are administered by [HCDCR]," which is "not a branch of Homeland Security, [ICE], or a Federal Government agency." *Id.* at 4. While ICE may exercise legal control over detainees at the HCCF, it is nonetheless clear that the HCCF warden is the one who exercises immediate "day-to-day" control.[4]

Finally, as mentioned above, *Padilla* recognized that "an important corollary to the immediate custodian rule" is the "district of confinement" rule, which provides that "jurisdiction lies in only one district: the district of confinement." *Padilla*, 542 U.S. at 443, 446–47. As the Supreme Court explained, this rule "serves the important purpose of preventing forum shopping by habeas petitioners." *Id.* at 447. Without such a clear rule, the Court reasoned, "a prisoner could

---

[4] The PBNDS definition of an Intergovernmental Service Agreement ("IGSA") recognizes that local facilities that contract with ICE pursuant to an IGSA do so in order "to provide bed space for ICE detainees, and to provide the clothing, medical care, food and drink, security and other services." PBNDS § 7.5. Several provisions in the PBNDS make clear that, although ICE may have responsibility for certain tasks and may retain ultimate control over various aspects of detention, the "facility administrator" (i.e., the warden) is responsible for administering the day-to-day activities within the particular facility. *See, e.g.*, PBNDS § 4.1(V)(D)(1) ("Ordinarily detainees shall be served three meals every day, at least two of which shall be hot meals; however, the facility administrator may approve variations in the food service schedule during religious and civic holidays."); *id.* § 7.5 (defining "facility administrator" as the "chief executive officer of a detention facility," whose formal title may be "warden"). Moreover, nothing in the PBNDS limits the HCCF warden's ability to comply with an order of habeas relief. *See Lizardo*, 2018 WL 6444371, at *3 ("If a court ultimately orders the warden of the Hudson County Correctional Facility to show cause for Petitioner's detention; to produce Petitioner for a hearing; to give him a bond hearing or release him; or to release him, period, then the warden must do so—or refuse at his peril.").

name a high-level supervisory official as respondent and then sue that person wherever he is amenable to long-arm jurisdiction. The result would be rampant forum shopping, district courts with overlapping jurisdiction, and the very inconvenience, expense, and embarrassment Congress sought to avoid when it added the jurisdictional limitation 137 years ago." *Id.* By limiting jurisdiction to the district of confinement when a detainee challenges his physical detention—regardless of the type of physical detention—*Padilla*'s rule provides consistency and predictably for all parties involved. Petitioners know where they may file their petitions, and respondents know where they may be called into court. *Padilla* thus provides a clear rule for petitioners, respondents, and courts alike.

For Sanchez, the district of confinement is the District of New Jersey. It is undisputed that Sanchez was not physically present in New York when his habeas petition was filed, and that he is—and has at all relevant times been—confined in New Jersey.[5] Contrary to the suggestion from amicus curiae that applying *Padilla*'s rule would allow the government to "manipulate the availability of habeas relief and access to counsel," there is no evidence in the record suggesting that the government detained Sanchez at the HCCF in bad faith or that it transferred Sanchez to its subcontracted facility in New Jersey in an attempt to obstruct his access to habeas relief. The Government has legitimate reasons for using subcontracted facilities to house detainees, *see* Gov't Suppl. Br., Dkt. 18, at 2–3, 18–19, and Sanchez has been detained in the same facility since his arrest in January 2018. Moreover, "the United States District Court for the District of New Jersey is and has always been an available forum to Sanchez." *See id.* at 17. Absent any "attempt to

---

[5] That Sanchez was temporarily transported to New York months before filing his petition does not alter this conclusion. *See Ramos Perez*, 355 F. Supp. 3d at 188 ("Petitioner was not present in this District when his petition was filed. The Court is unaware of any precedent that supports habeas jurisdiction in a physical location that a petitioner traveled through for a day, months before the petition was filed.").

13

manipulate [Sanchez's] transfer in bad faith," and absent any contrary instruction from the Supreme Court or the Second Circuit, the Court will continue to apply the immediate custodian rule in cases such as this one, and find that the warden of the facility where the petitioner is housed is the proper respondent. *See Salcedo*, 2019 WL 339642, at *2. Thus, Sanchez's habeas petition must proceed in the District of New Jersey.[6]

## CONCLUSION

Because Sanchez was confined in New Jersey at the time he filed this petition, and because the warden of the Hudson County Correctional Facility in New Jersey is the proper respondent, this Court lacks jurisdiction over Sanchez's habeas petition. Accordingly, the Court transfers this petition to the District of New Jersey pursuant to 28 U.S.C. § 1406(a).

The Clerk of Court is respectfully directed to terminate all open motions and transfer this case to the United States District Court for the District of New Jersey. To minimize any delay, the Court waives the seven-day waiting period contained in Local Civil Rule 83.1, and respectfully directs the Clerk to effectuate the transfer as soon as possible.

SO ORDERED.

Dated: November 25, 2019
New York, New York

Ronnie Abrams
United States District Judge

---

[6] To the extent the Court has not addressed the other arguments advanced by Sanchez and/or the amicus curiae, including the comparisons to other forms of contractual detention, those arguments are rejected.

14